UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BILL SAMPLE ) | |
| ) | |
| *Plaintiff,* ) | |
| v. ) | Cause No. 3:18-CV-350 RLM |
| ) | |
| BOARD OF COMMISSIONERS of STARKE ) | |
| COUNTY, INDIANA, ) | |
| ) | |
| *Defendant.* ) | |

OPINION AND ORDER

Bill Sample sued the Starke County Board of Commissioners, alleging that the County interfered with his rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § *2601 et seq,* discriminated against him in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 USC § 12101 *et seq,* and unlawfully retaliated against him under the ADA. Mr. Sample has moved for partial summary judgment on his ADA claim and the FMLA interference claim. The County has moved for summary judgment on all counts.

I. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). The court must construe the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. Anderson v. Liberty

Lobby, Inc.*,* 477 U.S. 242, 255 (1986). Inferences can't be based only on "speculation or conjecture," Herzog v. Graphic Packaging Int'l Inc., 742 F.3d 802, 806 (7th Cir 2014); Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc., 517 F.3d 470, 473 (7th Cir. 2008), and "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also* Dawson v. Brown, 803 F.3d 829, 833 (7th Cir. 2015). "[T]he requirement is that there be no genuine issue of material fact." Id. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Egonmwan v. Cook County Sheriff's Dept., 602 F.3d 845, 849 (7th Cir. 2010) (quotation marks omitted). The motions must be evaluated individually, because inferences must be drawn against Mr. Sample on his motion, and against him on the county's motion. Stiemel v. Wernert, 823 F.3d 902, 910 (7th Cir. 2016), *citing* Advance Cable Co., LLC v. Cincinnati Ins. Co., 788 F.3d 743, 746 (7th Cir.2015).

## II. UNDISPUTED FACTS

Bill Sample worked as a truck driver for the Starke County Highway Department from May 2014 until he was terminated in September 2017. On March 15, 2017 Mr. Sample sustained a severe right arm and rotator cuff injury that required surgery and more than six months of follow up care from an orthopedic surgeon. Mr. Sample's doctor ordered him off work from March 20 to

2

May 21, 2017. After that, the doctor authorized Mr. Sample to return to work in a supervisory position only. The Highway Department Superintendent Stephen Ritzler identified a possible part-time work crew that Mr. Sample could supervise, but the work crew never materialized. Mr. Sample's employment was terminated six months after the onset of his disability, pursuant to the County's disability leave policy. Mr. Sample's doctor released him to return to work without restrictions on October 6, 2017, six and a half months after the onset of his disability.

Mr. Sample filed a charge with the EEOC in November 2017. In March 2018, the Highway Department advertised positions for truck drivers, and Mr. Sample applied. Mr. Sample was interviewed, but not hired. Additional facts are provided as necessary.

### III. DISCUSSION

#### A. FMLA Interference

The County argues that it should be granted summary judgment on Mr. Sample's FMLA interference claim because he gave them too little notice that he was in need of FMLA leave and because he suffered no harm. Mr. Sample argues that he, not the County, should be granted summary judgment as to the Couty's liability for FMLA interference. The County is entitled to summary judgment on Mr. Sample's FMLA interference claim because no reasonable jury could find that Mr. Sample suffered harm.

3

Mr. Sample relies heavily on Schober v. SMC Pneumatics, Inc., 2000 U.S. Dist. LEXIS 19088 (S.D. Ind. 2000), but Schober can't provide the support Mr. Sample needs. First, Schober is a non-precedential opinion from a sister district court, but the district judge, John D. Tinder, went on to a distinguished career on the court of appeals, and the opinion was persuasive if not precedential when it was written, as far as it went. "When it was written" is an important qualifier: the opinion was written a year before the U.S. Supreme Court decided Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002). But most importantly, the opinion dealt with motions *in limine* rather than with substantive law. Michelle Schober had been fired for too many absences. Her ex-employer wanted to exclude evidence that it counted excused FMLA absences along with all other absences in enforcing the company attendance policy. Judge Tinder disagreed, and wrote the sentence that Mr. Sample cites: "if an employer terminates an employee because of excessive absences and the employee was entitled to FMLA leave for some or all of those absences, then the employer has interfered with the employee's exercise of his or her rights under the FMLA." 2000 U.S. Dist. LEXIS 19088, at *13, but the opinion only held that the evidence would be relevant to her claim that she was terminated for taking FMLA leave, among other absences. The Schober opinion doesn't refute the County's position that under the regulations and the employee handbook it properly double-counted the first 12 weeks in which Mr. Sample was unable to work.

Mr. Sample can't show harm because he would have been terminated even if 12 weeks of his workers' compensation disability leave had been designated as

4

FMLA leave. Workers' compensation leave and FMLA leave may run concurrently if the employer provides proper notice and designates the leave. 29 C.F.R. § 825.702(d)(2). Failure to designate leave as FMLA leave doesn't subject an employer to liability unless the employee can show that the failure to designate prejudiced him. Ridings v. Riverside Med. Ctr., 537 F.3d 755, 762 (7th Cir. 2008) (citing Ragsdale, 535 U.S. at 94). An employee may be unable to show harm if his serious health condition prevented him from returning to work by the end of the period he would've been entitled to FMLA leave. 29 CFR 825.301(e).

Mr. Sample hasn't shown that he was prejudiced by failure to designate 12 weeks of his leave as FMLA leave. Mr. Sample was restricted to either no work or only supervisory work for 14 weeks and 1 day. He has designated no evidence that there was a supervisory-only position available for him to fill or that the Highway Department had a practice of creating supervisory positions, as distinct from light-duty, for workers. Mr. Sample contends that he was prejudiced because had 12 weeks of the leave been designated as FMLA leave, he wouldn't have been terminated in September: he still would have 12 weeks of FMLA leave available when his six months of Worker's Compensation leave expired. This argument fails because FMLA leave may run concurrently with other leave and the employee handbook's disability policy starts the clock for both at the onset of disability.

The law generally allows an employer to run FMLA leave concurrently with other types of leave as long as the employer provides notice and designates the leave. 29 C.F.R. § 825.702(d)(2). The handbook provides that any paid time taken

during FMLA leave will be considered part of the leave. Mr. Sample had notice that any FMLA leave would run concurrently with his workers' compensation disability leave. Ms. Sample wasn't prejudiced by the County's failure to designate the leave as FMLA leave because the FMLA leave would elapse while he still had Worker's Compensation leave.

Mr. Sample argues that as applied, the County's disability policy violates FMLA regulations. 29 C.F.R. § 825.215 and 825.220 prohibit an employer from counting FMLA leave against a no-fault attendance policy. Those regulations don't apply; Mr. Sample wasn't terminated pursuant to a no-fault attendance policy. *See* Bailey v. Pregis Innovative Packaging, Inc., 600 F.3d 748, 751 (7th Cir. 2010) (no fault attendance policies are so named "because they do not require or permit the employee to justify an absence by presenting a note from his doctor or equivalent evidence of justification[.]"). Mr. Sample was on workers compensation disability leave, which necessarily requires that he be entitled to workers compensation benefits. 29 C.F.R. § 825.215 and 825.220 don't prohibit the County from counting FMLA leave against the disability leave provided by the County's policy.

Second, the handbook's disability policy provides that "[i]f an employee is able to return to work within 6 months of the onset of the disability, the County will place that employee into the same of substantially equivalent position. If an employee remains unable to be released to return to work after 6 months, the employee's employment may be terminated." This policy starts the clock at the onset of disability, rather than after FMLA leave has been exhausted. The FMLA

6

protects 12 weeks of leave. Mr. Sample received more than that, so he didn't suffer any harm.

Since Mr. Sample can't show harm resulting from the County's alleged interference with his rights under the FMLA, the court grants the County's motion for summary judgment on the FMLA interference claim.

### (B) ADA Failure to Accommodate

A failure to accommodate claim under the ADA has three elements. The employee must show that "(1) [he] is a qualified individual with a disability; (2) the defendant was aware of [his] disability; and (3) the defendant failed to reasonably accommodate [his] disability." Gratzl v. Office of Chief Judges of 12th, 18th, 19th and 22th Judicial Circuits, 601 F.3d 674, 678 (7th Cir. 2010). The parties agree that the County knew of Mr. Sample's disability. The County argues that it is entitled to summary judgment because Mr. Sample wasn't a qualified individual and because it didn't fail to reasonably accommodate his disability. Mr. Sample contends that he is entitled to summary judgment because the County had a 100% healed policy that is a per se violation of the ADA.

#### *1) Qualified individual*

A qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). By statute, the court looks to "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description … for

the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). EEOC regulations provide additional factors to consider, including the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences. Emerson v. Northern States Power Co., 256 F.3d 506, 512-513 (7th Cir. 2001). Mr. Sample bears the initial burden of establishing that he was a qualified individual who could perform the essential functions of his position. Taylor-Novotny v. Health All. Med. Plans, Inc., 772 F.3d 478, 493 (7th Cir. 2014).

The parties dispute whether Mr. Sample could perform the essential functions of his job without reasonable accommodations. The County provides an undated written job description and Mr. Ritzler's testimony that a truck driver needs to lift at least 50 pounds, and that the duties extend beyond simply driving to patching, chip and sealing roads, replacing culverts and pipes, replacement of signs, digging ditches, and mowing. He testified that drivers must lift to even get into the truck. Mr. Sample, Mr. Clapp, Mr. Cornwall, and Mr. Pranger all testified that a truck driver ordinarily wouldn't lift more than 20-25 pounds. Mr. Sample's doctor released Mr. Sample to lift 50 pounds below his waist by the end of August 2017. Viewing evidence in the light most favorable to Mr. Sample, he was a qualified individual with a disability. Viewing the evidence most favorably to the County, he wasn't.

8

*2) Failure to accommodate*

The County maintains that it didn't fail to accommodate Mr. Sample because it wasn't required to create a light-duty position and Mr. Sample, not the County, was responsible for any breakdown in the interactive process. The County is correct that ADA doesn't require an employer to create a light-duty position for an injured employee. *See* Watson v. Lithonia Lighting, 304 F.3d 749, 752 (7th Cir. 2002). A plaintiff must show that a vacant position existed for which he was qualified. Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001). But an employer with a policy of creating light-duty positions for employees must do so for all employees. Severson v. Heartland Woodcraft, Inc., 872 F.3d 476, 482 (7th Cir. 2017)(citing Gratzl v. Office of Chief Judges of 12th, 18th, 19th & 22nd Judicial Circuits, 601 F.3d 674, 680 (7th Cir. 2010)).

Mr. Cornwall, Clapp, and Mr. Pranger all stated that it was the Highway Department's routine practice to find light-duty work for an injured driver. But the employee handbook says that the County will cooperate with a doctor's written orders for an employee to return to light work "when it is possible and appropriate." The County distinguishes the conditions under which Mr. Cornwall, Mr. Clapp, Mr. McIntyre, Mr. Collins, and Mr. Saine were accommodated with light-duty work from Mr. Sample's condition. There is enough evidence to raise a genuine issue of fact as to whether the Highway Department had an unwritten policy of creating light-duty jobs, or if the temporary jobs given to the other workers were simply "acts of grace" for which the County shouldn't be punished. Severson, 872 F.3d at 483.

9

The County also argues that since Mr. Sample didn't have a date on which he would be cleared to return to his full duties, it wasn't required to provide Mr. Sample with light-duty work for an indefinite period of time. The County cites to Malabarba v. Chicago Tribune, in which the plaintiff argued that his status as a qualified individual with a disability should be measured from the light-duty work to which the Tribune had assigned him as an accommodation. Malabarba v. Chi. Tribune Co., 149 F.3d 690, 696 (7th Cir. 1998). Malabarba and its progeny relate to whether an individual is a qualified individual rather than whether a person's limitations have a definite end. Those cases don't show that the County wasn't required to make reasonable accommodations simply because it was unclear when Mr. Sample would be able to return to working without accommodation.

Once an employee discloses that he is qualified individual with a disability, the ADA requires that the employer "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789, 805 (7th Cir. 2005). "The interactive process the ADA foresees is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." Rehling v. City of Chicago, 207 F.3d 1009, 1015 (7th Cir. 2000). Failure to engage in interactive process is only actionable if it prevents identification of an appropriate accommodation for a qualified individual. Spurling v. C&M Fine

Pack, Inc., 739 F.3d 1055, 1062 (7th Cir. 2014). The County says it engaged in an interactive process.

The County posits that Mr. Ritzler's identification of a position supervising a part-time crew precludes a finding that the County violated the ADA. But while Mr. Ritzler's identification of a potential job for Mr. Sample is an indication that Mr. Ritzler was engaging in the interactive process, it didn't relieve him of responsibility for continuing the process when that job wasn't forthcoming.

The County also argues that Mr. Sample failed to request a specific accommodation, so the County had no duty to engage in the interactive process. The case to which the County cites faults the plaintiff for the breakdown of the interactive process, but the plaintiff failed in many ways beyond not requesting a specific accommodation. Jackson v. City of Chicago, 414 F.3d 806, 813-14 (7th Cir. 2005) (breakdown of the interactive process was caused by Ms. Jackson's failure to identify her physical limitations or provide any medical record when the City repeatedly reached out). In contrast, Mr. Sample provided medical records sufficient to allow the County to determine what accommodations might be required. It is failure to help the employer identify a specific accommodation, not failing to request a specific accommodation, that causes a breakdown. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 805 (7th Cir. 2005) (citing Beck v. Univ. of Wisc. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996).

Additionally, Mr. Sample asked for more time to get a full release. An employer isn't required to give an employee unlimited time off as an accommodation. Severson, 872 F.3d at 481. But since the work status reports

11

submitted to the County by Mr. Sample's doctor included consistent improvements, a reasonable jury could find that Mr. Sample only required "a short leave of absence… [which is] analogous to a part-time or modified work schedule, two of the examples listed in § 12111(9)." Severson, 872 F.3d at 481.

Mr. Ritzler said he reviewed each of the work reports that Mr. Sample submitted, checked with the Auditor's office about work that would comply with Mr. Sample's restrictions, and communicated with Mr. Sample. He maintains that he never told Mr. Sample that the Highway Department wouldn't accommodate his disability. Mr. Sample alleges that Mr. Ritzler told him that the County wouldn't provide accommodations and then stopped discussing accommodations or his physical restrictions with him. Mr. Ritzler and Mr. Sample's contradictory statements create a genuine issue of fact as to who caused the breakdown in the interactive process and whether reasonable accommodations were available.

*3) 100% healed policy*

Mr. Sample alleges that the Highway Department has a 100% healed policy that violates the ADA. Such a policy "constitutes a per se violation of the ADA because it 'prevents individual assessment . . . [and] necessarily operates to exclude disabled people that are qualified to work.'" Mazzacone v. Tyson Fresh Meats, Inc., 195 F. Supp. 3d 1022, 1029 (N.D. Ind. 2016) (quoting Steffen v. Donahoe, 680 F.3d 738, 748 (7th Cir. 2012)). Mr. Ritzler did say that Mr. Sample was terminated because he couldn't return to 100% work, but he also testified that he looked for other work Mr. Sample could perform. And the handbook

specifically states that, when possible and appropriate, the County would cooperate with a doctor's written order to place an employee on light-duty work. There is a genuine question of whether the County applied a 100% healed policy against Mr. Sample.

Mr. Sample also contends that the County used its disability policy as an excuse to not accommodate Mr. Sample in violation of the ADA. It is undisputed that Mr. Sample was terminated under the disability policy because he didn't return to work within six months. As already discussed, Mr. Sample and the County designated contradictory evidence about the extent of Mr. Ritzler's attempt to accommodate Mr. Sample within those six months. If the County attempted to accommodate Mr. Sample and terminated him when it couldn't find a reasonable accommodation after six months, the disability policy wouldn't have been a run-around to escape liability under the ADA. There is a genuine issue of fact as to whether the County used the disability policy as an excuse to not accommodate Mr. Sample.

A reasonable jury could find for either Mr. Sample or the County on the ADA failure to accommodate claim, so summary judgment isn't appropriate.

### (C) ADA Retaliation

Mr. Sample didn't move for summary judgment on the ADA retaliation claim, but the County did. To state a claim of disability retaliation, a plaintiff must establish that "(1) []he engaged in a statutorily protected activity; (2) []he suffered an adverse employment action; and (3) there is a causal connection

between the two." Guzman v. Brown County, 884 F.3d 633, 642 (7th Cir. 2018). To the extent Mr. Sample contends the County retaliated by failing to accommodate (which he doesn't appear to pursue after the complaint), that claim fails. Most courts addressing the issue have found that failure to accommodate can't serve as an adverse action for an ADA retaliation. *See, e.g.,* Avet v. Dart, 2016 U.S. Dist. LEXIS 24198, 2016 WL 757961, at *6 (N.D. Ill. Feb. 26, 2016); Moore-Fotso v. Bd. of Educ. of Chi., 211 F. Supp. 3d 1012, 1037-38 (N.D. Ill. 2016); Pack v. Ill. Dep't of Healthcare & Family Servs., 2014 U.S. Dist. LEXIS 101552, 2014 WL 3704917, at *4 (N.D. Ill. July 25, 2014); Sheahan v. Dart, 2015 U.S. Dist. LEXIS 55026, 2015 WL 1915246, at *6 (N.D. Ill. Apr. 23, 2015; Pagliaroni v. Daimler Chrysler Corp., 2006 U.S. Dist. LEXIS 66720, 2006 WL 2668157, at *9 (E.D. Wis. Sept. 15, 2006); Imbody v. C & R Plating Corp., 2009 U.S. Dist. LEXIS 4779, 2009 WL 196251, at *4 (N.D. Ind. Jan. 23, 2009). This court joins the better-reasoned cases: "it was unlikely Congress' intent to provide plaintiffs redundant relief for the same conduct when it established the anti-retaliation provisions of the ADA." Pagliaroni v. Daimler Chrysler, 2006 U.S. Dist. LEXIS at *9.

Mr. Sample alleged retaliation in the County's failure to rehire him. The County contends that Mr. Sample's ADA retaliation claim is subject to summary judgment because (1) he wasn't a qualified individual with a disability at the time of the alleged retaliation; (2) he can't establish causation; and (3) a retaliation claim can't be based on action that take place after an employee is terminated.

The ADA "prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim." Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 785 (7th Cir. 2007). That Mr. Sample was admittedly not a qualified individual with a disability at the time of the alleged retaliation – he had no disability when the County chose not to re-hire him – doesn't preclude success on his retaliation claim. The County also contends that Mr. Sample can't establish causation because he filed his charge of discrimination four months before the advertisement of the position and because another applicant was more qualified. While the temporal connection alone would be insufficient to establish a causal connection, *see* Jasmantas v. Subaru-Isuzu Auto., 139 F.3d 1155, 1157 (7th Cir. 1998), Mr. Sample provided the court with other evidence.  Mr. Sample offered his sworn statement that Mr. Ritzler said the County's attorney instructed Mr. Ritzler to not hire Mr. Sample because Mr. Sample had filed the charge with the EEOC. Mr. Ritzler denies that statement, but the evidence raises a question of fact as to whether there's a causal connection between Mr. Sample's charge and the County's decision to not rehire him.

Finally, the County argues that a retaliation claim can't be based on an action that takes place after termination. The County cites to Guzman v. Brown County, 884 F.3d at 643 in support of this contention. Guzman addressed a claim that Brown County retaliated against its employee by sending the sheriff's department to repossess her furniture.  The Guzman court stated a simplified version of a rule it laid out in a previous case. In Reed v. Sheppard, the court

said that the harassing activity that a former employee described as retaliation for her Title VII complaint couldn't constitute retaliation because "it is an employee's discharge or other employment impairment that evidences actionable retaliation, and not events subsequent to and unrelated to his employment." Reed v. Shepard, 939 F.2d 484, 493 (7th Cir. 1991). The conduct at question in this case falls under the "other employment impairment." The court of appeals has called refusal to rehire an adverse action in the context of a Title VII retaliation claim. Baines v. Walgreen Co., 863 F.3d 656, 666 (7th Cir. 2017). Guzman doesn't bar Mr. Sample's retaliation claim based on actions after his termination.

A reasonable jury could find that the County retaliated against Mr. Sample for engaging in a protected activity, so the court denies summary judgment on Mr. Sample's retaliation claim.

## IV. CONCLUSION

Accordingly, the court DENIES Mr. Sample's motion for partial summary judgment [Doc. No. 41]; the court GRANTS IN PART and DENIES IN PART the County's motion for summary judgment [Do. No. 50] as follows:

(1) Summary judgment is DENIED on the ADA failure to accommodate and retaliation claims contained in Count II of the complaint; and

(2) Summary judgment is GRANTED on the FMLA interference claim contained in Count I of the complaint.

SO ORDERED.

ENTERED:   July 21, 2020

/s/ Robert L. Miller, Jr.

Judge, United States District Court